# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60574

United States Court of Appeals
Fifth Circuit

**FILED**

January 8, 2015

Lyle W. Cayce
Clerk

DARNELL WILSON,

     Plaintiff - Appellant

v.

CHRISTOPHER B. EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT
OF CORRECTIONS; JAMES HOLMAN, Warden at Central Mississippi
Correctional Facility; MARGARETT BINGHAM, Superintendent at Central
Mississippi Correctional Facility; EDDIE CATES, Classification and Moving
Supervisor at Central Mississippi Correctional Facility,

     Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before JOLLY, HIGGINBOTHAM, and OWEN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Darnell Wilson, Mississippi prisoner # 159643, filed a complaint in the
district court alleging that the prison-official defendants had violated his[1]
constitutional rights. The magistrate judge dismissed the complaint on the
ground that Wilson had failed to exhaust administrative remedies. In his
primary contention on appeal, Wilson argues that the prison's failure to

---

[1] Although Wilson appears to identify as a transgender woman, he generally uses male
pronouns in his filings. For the sake of consistency and clarity, we do the same.

No. 13-60574

respond to his grievances excuses his non-exhaustion. We disagree because, under both the particular grievance process at issue here and the settled law of this circuit, a prison's failure to respond at preliminary steps in its grievance process does not relieve a prisoner of the duty to complete the remaining steps. We therefore AFFIRM.

I.

Darnell Wilson is a prisoner who, at all times relevant to this appeal, was housed at Central Mississippi Correctional Facility ("CMCF"). On September 20, 2010, Wilson filed a complaint in the district court. In the 63-page complaint, he alleged a host of facts and incidents aimed at showing that the defendants—the Commissioner of the Mississippi Department of Corrections ("MDOC"), the warden of CMCF, and other employees of CMCF—had violated his constitutional rights. Among these allegations were that his uniform and linens had not been changed often enough, that he received a haircut against his will that was administered with unsterilized scissors, and that he was exposed to secondhand cigarette smoke emitted by his fellow prisoners. The complaint also alleged that Wilson had filed ten formal grievances with the prison between July 23 and August 15, 2010, that he had received no response to these grievances, and that the 90-day period within which the prison could process a grievance was too long.

The parties consented to proceed before the magistrate judge. The defendants then moved to dismiss on the ground that Wilson had not exhausted administrative remedies, pointing to statements in Wilson's complaint and attaching several hundred pages' worth of Wilson's grievances and related documents. Wilson opposed the motion, asserting that the exhaustion requirement should be deemed satisfied because of the prison's failure to respond to his grievances.

No. 13-60574

Construing the defendants' motion as a motion for summary judgment, the magistrate judge dismissed Wilson's claims. The magistrate judge held that Wilson's complaint, together with the grievance records, demonstrated that Wilson had failed to exhaust administrative remedies. Further, the magistrate judge found that Wilson had not alleged any ailment that might excuse his failure to exhaust, and that, though the prison had failed to respond, there is no "substantial compliance" exception to the exhaustion requirement in this circuit. Finally, the magistrate judge held that Wilson's arguments about the length of MDOC's grievance process were unavailing, as this court had already approved of a grievance process similar to MDOC's. Wilson appeals from this dismissal.

## II.

"We review the grant of summary judgment *de novo,* applying the same standards as the district court." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks omitted). Those standards require the court to grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the court should "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon*, 596 F.3d at 266 (internal quotation marks omitted).

Failure to exhaust is an affirmative defense, such that the defendants have the burden of demonstrating that Wilson failed to exhaust administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). At the summary-judgment stage, this means that the defendants "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Dillon*, 596 F.3d at 266.

3

No. 13-60574

III.

A.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." To determine what remedies are "available" and thus must be exhausted, we look to "the applicable procedural rules . . . defined . . . by the prison grievance process itself." *Jones*, 549 U.S. at 218 (citation omitted) (internal quotation marks omitted). Because § 1997e "requires that administrative remedies be exhausted *before* the filing of a § 1983 suit," *see Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998), the relevant rules are those that governed MDOC's grievance process at the time prior to the filing of Wilson's suit. This circuit has taken a "strict" approach to § 1997e's exhaustion requirement, under which prisoners must not just substantially comply with the prison's grievance procedures, but instead must "exhaust available remedies *properly*." *Dillon*, 596 F.3d at 268 (emphasis added).

MDOC's grievance process is called the Administrative Remedy Program ("the Program"). Prior to the filing of Wilson's suit, the Program provided for a three-step process that is summarized in *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004)[2]:

---

[2] The Program now appears to be a two-step process in which the only appeal is to the Superintendent, Warden, or Community Corrections Director, who must render a final decision within 45 days. *See* MDOC Inmate Handbook, ch. VIII, *available at* http://www.mdoc.state.ms.us/Inmate_Handbook/CHAPTER%20VIII.pdf. Inspection of the record, however, shows that MDOC forms still referred to a "3rd step" at least as late as July 30, 2011. Thus, since Wilson filed his complaint on September 20, 2010, the three-step version of the Program described in *Gates* appears to be the appropriate version to consider here. Nevertheless, our analysis would not change if the new, two-step Program were already in place, since the summary-judgment evidence shows that, before filing his complaint, Wilson did not receive any second-step responses and did not file his first-step grievances in time for MDOC's time period for rendering a second-step response to have expired. *See infra* at 7–8.

No. 13-60574

1) the inmate writes a letter to the Superintendent/Deputy Commissioner in care of the Legal Claims Adjudicator that is referred to a respondent by the Legal Claims Adjudicator; 2) if dissatisfied, the inmate may request relief from the Superintendent/Deputy Commissioner; 3) if dissatisfied, the inmate may appeal to the Commissioner in care of the ARP Administrator. The Commissioner will notify the inmate of his final decision within forty days of receiving the appeal. . . . . The ARP also provides that "[n]o more than ninety (90) days from initiation to completion of the process shall elapse, unless an extension has been granted" and that "expiration of response time limits without receipt of a written response shall entitle the offender to move on to the next step in the process."

*Id.* at 330. First-step letters are referred to as "ARPs." Finally, MDOC employs a "backlogging" policy under which only one ARP is considered active at a time, while the rest are maintained in "backlog."

B.

Wilson presents two arguments on appeal. First, he argues that summary judgment was inappropriate because the Program's grievance process is "too lengthy," "unconstitutional," and "improper." Second, Wilson contends that his administrative remedies should be deemed exhausted because MDOC failed timely to respond to his ARPs.

The defendants respond that the fact of exhaustion "is not at issue" because Wilson's statements in his complaint conclusively demonstrate his failure to exhaust. The defendants further argue that MDOC's grievance process is permissible because, in *Wilson v. Boise*, 252 F.3d 1356, 2001 U.S. App. LEXIS 31249 (5th Cir. Mar. 30, 2001) (unpublished), this court approved of a backlogging procedure similar to the one employed by MDOC.

Wilson's first argument—that the ARP's grievance process is unconstitutional because it gives MDOC too much time to respond—is meritless. Initially, Wilson cites no authority and provides no reasoning to support his argument that the Constitution speaks to how long the prison's

5

No. 13-60574

grievance process may take.  Moreover, we have observed before that an "inquir[y into] whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness" is inappropriate in determining whether a prisoner has exhausted administrative remedies.  *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir. 2003) (per curiam) (internal quotation marks omitted).  Finally, to the extent that Wilson's argument is aimed at MDOC's backlogging procedure, the defendants are correct that, in *Wilson*, we recognized that backlogging is not unconstitutional, nor does it abrogate § 1997e's exhaustion requirement.  *Wilson*, 2001 U.S. App. LEXIS 31249, at *9–10.

　　We turn, then, to Wilson's second argument—that the prison's failure to respond to his ARPs excused him from § 1997e's exhaustion requirement.  This argument deserves closer scrutiny, because, under some circumstances, a prison's failure to respond to a prisoner's grievances can result in the prisoner's administrative remedies being deemed exhausted.  *See Gates*, 376 F.3d at 331; *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998) *abrogated on other grounds by Jones*, 549 U.S. at 215.  Such circumstances, however, are absent here.

　　Section 1997e's exhaustion requirement is satisfied only if the prisoner "pursue[s] the grievance remedy to conclusion."  *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).  This requirement does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process. Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process.  Thus, it is only if the prison fails to respond at the *last* step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance.  This is true both under the terms of the Program, *see Gates*, 376 F.3d at 330

6

("[E]xpiration of response time limits without receipt of a written response shall entitle the offender to move on to the next step in the process." (internal quotation marks omitted)), and as a matter of the law of this circuit. *See Taylor v. Burns*, 371 F. App'x 479, 481 (5th Cir. 2010) (unpublished) ("The expiration of the time for the prison to respond . . . result[s] in exhaustion only if [the prisoner] . . . timely pursue[s] his grievance at each step of the process." (citing *Wright*, 260 F.3d at 358)); *see also, e.g., Ryan v. Phillips*, 558 F. App'x 477, 478 (5th Cir. 2014) (unpublished); *Mesquiti v. Gallegos*, 427 F. App'x 377, 378 (5th Cir. 2011) (unpublished); *Hicks v. Garcia*, 372 F. App'x 557, 558 (5th Cir. 2010) (unpublished).

Wilson, then, cannot maintain a suit founded on any claim that he presented to the prison in only a step-one ARP, irrespective of whether the prison responded within the time allotted for rendering step-one responses. To the contrary, the prison's failure to respond will result in exhaustion of Wilson's administrative remedies only if Wilson went on to file both a step-two and a step-three appeal—that is, only if Wilson "pursue[d] the grievance remedy to conclusion," *see Wright*, 260 F.3d at 358—and the prison did not make a timely response at *that* point. With these principles in mind, we turn to whether there is a genuine issue of material fact that precludes summary judgment.

The defendants rely on Wilson's complaint to demonstrate his failure to exhaust. Wilson filed a form complaint, questions 6 and 7 of which deal with exhaustion. Question 6 asked Wilson whether he "presented to the grievance system the same facts and issues" alleged in the complaint. Wilson checked "Yes." Question 7.C then asked Wilson to "state everything [he] did to present [his] grievance(s)." Wilson responded by alleging that he had submitted ten ARPs and complaining about the 90-day time limit for completing the ARP process. He also noted that he wrote a letter to the warden on August 24, 2010,

in which he presented some of his grievances, including his lack of a clean uniform and linens.  Finally, Question 7.D asked Wilson to state what official response his grievance received, as well as whether Wilson applied for administrative review of the prison's decision.  Wilson answered that he received no initial responses from his ten ARP letters, and concluded by lamenting that he could not get his "complaints resolved or at least addressed."

These statements in Wilson's initial complaint are sufficient to demonstrate that there is no genuine issue of material fact as to whether Wilson exhausted his administrative remedies.  *See, e.g., Hicks v. Lingle*, 370 F. App'x 497, 498 (5th Cir. 2010) ("Dismissal may be appropriate . . . when, on its face, the complaint establishes the inmate's failure to exhaust." (citing *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007)).  As explained above, Wilson's remedies are not exhausted unless Wilson proceeded through all three steps of the Program's process, even if MDOC failed to respond at either of the preliminary steps.  According to his complaint, however, Wilson did not proceed through all three steps of the Program's process; instead, he completed only the first step of submitting ARPs, and then filed suit when those ARPs were not responded to in a timely fashion.

Moreover, even if we were to assume (contrary to the representations in Wilson's complaint) that Wilson *did* move on to steps two and three after the prison failed to respond to his ARPs, the prison's time limit for responding to his step-three appeals could not have expired by the time he filed his complaint.  Wilson submitted his ARPs between July 23 and August 15, 2010.  Thus, because the outer limit for how long the process can take is 90 days, *see Gates*, 376 F.3d at 330, the earliest date on which a third-step response could have become due was 90 days after July 23; that is, October 21.  Given that Wilson filed his complaint in the district court on September 20, 2010, it is

impossible for MDOC to have failed to timely respond to a third-step appeal prior to the filing of the complaint.

Thus, Wilson's complaint makes clear that he neither received a final-step response from the prison nor filed a final-step appeal and sued only after the prison failed to timely respond at that point. Accordingly, there is no genuine issue of material fact as to whether Wilson exhausted his administrative remedies, and summary judgment was appropriate.

IV.

In this appeal, Wilson argues that he need not have exhausted administrative remedies before suing because the prison's grievance process was unconstitutional and because the prison failed to respond to his grievances. For the reasons above, we reject both arguments. The magistrate judge's dismissal is, therefore,

AFFIRMED.